**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **JOHN MATTHEW M.,**[1] | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 25-2637-JWL** |
| **FRANK BISIGNANO,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Social Security Disability Insurance (SSDI) benefits pursuant to sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i), and 423 (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ's) assessment of Plaintiff's residual functional capacity (RFC), his consideration of the disabling symptoms alleged by Plaintiff, or his consideration of the opinion evidence, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

## I. Background

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of disability claimants, it has determined to caption Social Security decisions using only the initial of the Plaintiff's last name.

Plaintiff protectively filed an application for SSDI benefits on August 23, 2023. (R. 17, 164-66). After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Plaintiff claims the ALJ failed to accommodate the combined effects of Plaintiff's physical and mental impairments on Plaintiff's ability to remain on-task and to sustain attendance for full-time work, failed to support his finding that Plaintiff's allegations of disabling symptoms are of diminished persuasiveness because of inconsistencies with the record evidence, and failed to support his assessment of the opinion evidence.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). "Substantial evidence" refers to the weight, not the amount, of the evidence. It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the

evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988) (brackets in Bowling)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals

the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC). 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, he is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999). The court addresses the errors alleged in Plaintiff's Social Security Brief.

## II. Discussion

The court quotes the first paragraph in each argument section of Plaintiff's Brief.

> Given the utter dearth of analysis in the ALJ's Unfavorable decision, it is difficult to discern how he accommodated the effects of Plaintiff's mental impairments in the mental RFC assessment, much less the aggregate effects of Plaintiff's mental and physical impairments. As already noted, substantial evidence does not support the Commissioner's findings when it is overwhelmed by contrary evidence or when the ALJ offers nothing more than mere conclusions. In attempting to support his findings, the ALJ – at best – plucked out one or two facts from a voluminous treatment record, and, more often than not, simply leapt to a conclusion with no apparent

> attempt to provide a cogent rationale. At Step Three of the analysis the ALJ telegraphed his unsupported undermining of Plaintiff's deficits in work-related mental functioning, and, later in the decision, he did very little to expand on that deficient analysis.

(Pl. Br. 10).

> The ALJ's inadequate RFC assessment arises, in large part, out of his improper determination that "the record reflects some inconsistencies" that "diminish the persuasiveness of [Plaintiff's] subjective complaints." R.24. Pursuant to SSR 16-3p, to determine the extent to which an individual is limited by his symptoms, the ALJ must examine objective medical evidence, Plaintiff's statements, medical source statements, and "any other relevant evidence" in the record. Though "other relevant evidence" may include daily activities and treatment modalities, an ALJ must "provide specific reasons for the weight given to the [claimant's] symptoms, [which are] consistent with and supported by the evidence, and [ ] clearly articulated" for purposes of any subsequent review. SSR 16-3p. It is virtually impossible to discern how the ALJ arrived at his finding that there were inconsistencies to the extent that Plaintiff's claims are unsupported.

Id. 14 (brackets in Plaintiff's Brief).

> Though current regulations have put the focus on the content of the medical opinions and less on the relationships, they still demand that the ALJ "provide a coherent explanation of his reasoning" and "build an accurate and logical bridge from the evidence to" the evaluations given the different medical opinions. KJA v. Kijakazi, 2021 U.S. Dist. LEXIS 156474, *22-23[, 2021 WL 3674667, *8] (D. Kan. 2021). The ALJ is not required to discuss all the evidence, but he must nevertheless explain how the factors of supportability and consistency were considered. § 404.1520c(b)(2). In addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon as well as ["]significantly probative evidence he rejects." Janet Grace O. v. Kijakazi, No. 20-1228-JWL, 2021 U.S. Dist. LEXIS 133468, 2021 WL 3032913, at *5 (D. Kan. Jul. 19, 2021).

Id. 15 (parallel citation and opening quotation mark inserted by court).

Plaintiff's arguments, beginning with these paragraphs reveal he is laboring under the mistaken impression that the Commissioner has the burden to prove the agency's findings are correct in order to find Plaintiff is not disabled. In every respect relevant

here it is Plaintiff's burden to prove that he cannot sustain the on-task and attendance requirements of full-time work, that his alleged symptoms are disabling, and that the ALJ erred in assessing the opinion evidence. It is not the ALJ's burden to affirmatively prove that Plaintiff can meet the on-task and attendance requirements of full-time work, that Plaintiff's alleged symptoms are not disabling, or that the opinion evidence in the record is erroneous. Rather, it is the ALJ's responsibility to provide his rationale, based upon the record evidence, for the RFC assessed, for discounting Plaintiff's allegations of symptoms, and for finding the opinion evidence persuasive or not persuasive, and the record must contain "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" for the court to affirm the findings of the Commissioner. Perales, 402 U.S. at 401. Since the ALJ applied the correct legal standard to assess RFC, to evaluate Plaintiff's allegations of symptoms, and to evaluate the medical opinions and prior administrative medical findings, for the court to find error in the Commissioner's findings, Plaintiff must show the record evidence does not contain "such relevant evidence as a reasonable mind might accept as adequate to support [the ALJ's] conclusion" or that the record contains evidence which compels a contrary conclusion. He has done neither here.

**A. Effects of Combined Impairments**

The ALJ stated he had carefully considered the entire record and assessed an RFC for a range of light work. (R. 23) (finding no. 5). Plaintiff acknowledges that the consultative psychological examiner, Dr. Stilley, opined that Plaintiff has moderate limitations in concentrating, persisting, and maintaining pace, but argues that although

"he may have 'labeled' Plaintiff's limitations as moderate in this area, the examiner specifically pointed out that Plaintiff 'struggles significantly with task completion, focusing attention, and concentrating on the task at hand.'" (Pl. Br. 11) (italics omitted, quoting R. 815). Thereby, Plaintiff implies that the ALJ improperly characterized Dr. Stilley's opinion. However, as Plaintiff admits, Dr. Stilley opined that Plaintiff "has moderate impairment for sustained concentration and persistence in simple and repetitive tasks." (R. 816). Moreover, as will be discussed hereinafter, the ALJ found Dr. Stilley's opinions unpersuasive and Plaintiff has shown no error in that finding.

Plaintiff next points out that "it is well-established that moderate limitations in concentrating, persisting, or maintaining pace may be but are not necessarily accommodated by a limitation to unskilled work." (Pl. Br. 12) (citing Vigil v. Colvin, 805 F.3d 1199, 1204 (10th Cir. 2015); and Smith v. Colvin, 821 F.3d 1254, 1269 (10th Cir. 2016)). He argues,

> One would be hard-pressed to argue that Vigil and its progeny could coexist with the even more untenable proposition that moderate limitations in concentration can be accommodated by a "limitation" to skilled or semi-skilled work. The ALJ offered no support for making this leap and provided no explanation for such a finding.

Id. (Suggesting that the holding of Vigil and its progeny precludes the ALJ's finding that Plaintiff has a moderate limitation in concentrating, persisting, or maintaining pace while also finding that Plaintiff can maintain adequate focus, attention, concentration, persistence, and pace to perform semi-skilled work tasks. The problem with Plaintiff's argument is that he points to no semi-skilled work task which cannot be performed with the mental limitations assessed by the ALJ in this case. Neither Vigil nor its progeny

cited by Plaintiff stands for the precedent Plaintiff argues. In Vigil, the court noted, "There may be cases in which an ALJ's limitation to 'unskilled' work does not adequately address a claimant's mental limitations." 805 F.3d at 1204. (citing Chapo v. Astrue, 682 F.3d 1285, 1290 n.3 (10th Cir.2012)). The Vigil court went on to decide that the moderate limitations in that case were adequately accounted for because the ALJ limited the plaintiff to a Specific Vocational Preparation (SVP) level of one or two. Id.

The court agrees with the principal stated in Vigil and argued by Plaintiff to the extent that the ALJ's limitation to unskilled or semi-skilled work may not adequately account for every moderate mental limitation. However, the question before the court is whether the limitation to unskilled or semi-skilled work assessed here adequately accounts for the moderate mental limitation in concentrating, persisting, or maintaining pace assessed in the RFC here. Other than his broad statement quoted above that one is hard pressed to reconcile Vigil with the ALJ's assessment, Plaintiff does not point to record evidence demonstrating that the ALJ's assessment is erroneous. Although Plaintiff acknowledges the ALJ's explanation that the step-three findings are not an RFC assessment and argues the ALJ did not provide a more detailed assessment (Pl. Br. 11), he does not address the ALJ's RFC assessment (R. 23-26) and point to mental limitations expressed or encompassed therein which preclude the accomplishment of semi-skilled work but argues that a moderate limitation at step three in the broad mental functional area of concentrating, persisting, or maintaining pace precludes the accomplishment of any semi-skilled work.

Finally, as the Commissioner points out, all the representative jobs testified by the vocational expert (VE) and relied upon by the ALJ are unskilled occupations (SVP 2). (R. 27). Thus, even if Plaintiff had demonstrated error in assessing the capability for semi-skilled work, the error would be harmless because significant non-skilled work is available which Plaintiff can perform.

Plaintiff has shown no error in the ALJ's consideration of the combined effects of his impairments on the on-task and attendance requirements of work.

**B. Plaintiff's Allegations of Disabling Symptoms**

The ALJ stated he evaluated Plaintiff's allegations of symptoms in accordance with the standards in 20 C.F.R. § 404.1529 and SSR 16-3p, explaining the agency's two-step process for evaluating a claimant's allegations of symptoms—which the Tenth Circuit explained in Luna as a three-step credibility analysis. (R. 23); see also, Luna v. Bowen, 834 F.2d 161, 164-66 (10th Cir. 1987). The ALJ discussed Plaintiff's allegations of symptoms and explained the inconsistencies he relied upon in discounting Plaintiff's allegations.

> Claimant has sought and received treatment for chronic back pain and he has documented mild degenerative disc disease of the lumbar spine (See e.g., Exhs 1F/7, 139 and 170-171; 2F/5; and 9F/12, 17 and 20). He also has a history of arthroscopic surgery of the right knee, by history, for osteoarthritis of the knee (See e.g., Exh 1F/135). However, straight leg raising was normal as were gait, muscle tone and strength in all extremities upon thorough physical examination (Exh 7F/3).
>
> The claimant has undergone bilateral carpal tunnel releases with good result (See e.g., Exh 2F/27-28, 33 and 36). In limiting the claimant's exertional capability, the functional capacity assessment set forth in this decision nonetheless addresses limitations associated with this impairment.

The claimant has also been treated for acute anxiety and recurrent episodes of depression typically triggered by situational factors and the latter of severity to have resulted in suicidal thoughts at times (See e.g., Exhs 6F/3-4 and 9F/33). When not in acute distress, however, his mental status findings have been largely normal (See e.g., Exhs 11F/20; and 12F/36 and 115-116); and the record shows the claimant engages in numerous day-to-day activities, such as building and selling lithium power banks, handling childcare while his wife works, hammering and tearing apart pallets and building a doghouse in addition to those activities reported on his Function Reports (Exhs 5E; 6E; 12F/93 and 119; and 19F/1, 9 and 11).

The claimant has reported occasional marijuana use but elsewhere admitted to daily cannabis use consistent with his diagnosis of cannabis use disorder (See e.g., Exhs 6F/2; 9F/28; 12F/83; 13F/3 and 32; and 16F/9).

The undersigned finds the claimant's noted impairments could reasonably be expected to cause some of [the] symptoms he has alleged; and there is a reasonable nexus between his impairments and some of his alleged symptoms such as pain, sleep disorder, panic attacks, distractibility, irritability and associated functional limitations. However, because symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, the undersigned must carefully consider the claimant's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the consistency of his statements with the evidence as a whole, since a disability decision that is fully favorable to him cannot be made solely on the basis of available objective medical evidence in this case. In this regard, the undersigned must consider, in addition to the objective medical evidence, the claimant's work history; daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; factors that precipitate or aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; any measures other than treatment the claimant uses or has used to relieve pain or other symptoms; and any factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms (20 C.F.R. 404.1529 and 416.929 and SSR 16-3p).

In fact, considering all of the above, the undersigned finds the record reflects some inconsistencies. These discrepancies diminish the persuasiveness of his subjective complaints such that, even granting him the benefit of the doubt, the undersigned finds the claimant's statements

> concerning the intensity, persistence and limiting effects of his symptoms are not entirely supported by the available evidence as a whole. For example, as previously detailed and referenced, the claimant is able to engage in numerous day-to-day activities; and objective medical evidence of record fails to show ongoing impairments of severity to prevent all work activity. The record also reflects significant cannabis use, although the exact amount and impact of such is not known.

(R. 23-25).

The Tenth Circuit has explained the analysis for considering subjective allegations regarding symptoms. Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993) (dealing specifically with pain).

> A claimant's subjective allegation of pain is not sufficient in itself to establish disability. Before the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain. This court has stated: The framework for the proper analysis of Claimant's evidence of pain is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987). We must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

Thompson, 987 F.2d at 1488(citations and quotation omitted).

In evaluating a claimant's allegations of symptoms, the court has recognized a non-exhaustive list of factors which should be considered. Luna, 834 F.2d at 165-66; see also 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). These factors include:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and

> relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Thompson, 987 F.2d at 1489).[2]

The Commissioner has promulgated regulations suggesting relevant factors to be considered in evaluating a claimant's allegations of symptoms which overlap and expand upon the factors stated by the court: Daily activities; location, duration, frequency, and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for symptoms; measures plaintiff has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms. 20 C.F.R. § 404.1529(c)(3)(i-vii).

As summarized and quoted above, the ALJ applied the correct legal standard and stated the inconsistencies upon which he relied to discount Plaintiff's allegations of

---

[2] Luna, Thompson, and Kepler, were decided when the term used to describe the evaluation of a claimant's allegations of symptoms resulting from her impairments was "credibility determination." Although that term is no longer used, the applicable regulation never used that term and the procedure for evaluating a claimant's allegations of symptoms has not significantly changed. Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844-01, 5,871 (Jan. 18, 2017) (codified at 20 C.F.R. § 404.1529). Moreover, the Tenth Circuit held its approach to credibility determination was consistent with the approach set forth in SSR 16-3p. Brownrigg v. Berryhill, 688 Fed. App'x. 542, 546 (10th Cir. 2017). Therefore, the three-step framework set out in Luna, based on 20 C.F.R. § 404.1529 (2017) is still the proper standard to be used as explained in the regulations in effect on January 15, 2025, when this case was decided. Nonetheless, to the extent, and only to the extent, that "subjective measures of credibility that are peculiarly within the judgment of the ALJ;" Kepler, 68 F.3d at 391; relate to an examination of a claimant's character, it is specifically prohibited by SSR 16-3p and is no longer a valid factor to be considered.

disabling symptoms. Thus, Plaintiff is incorrect to argue it is "virtually impossible to discern" the ALJ's rationale for discounting his alleged symptoms. While the ALJ may have been more clear or may have provided greater explanation, he provided his reasons, those reasons are supported by the record evidence, and Plaintiff does not point to record evidence which compels a contrary finding. Plaintiff's appeal to the consultative examiners' opinions will be addressed next.

## C. The ALJ's Consideration of the Opinion Evidence[3]

Plaintiff expresses his opinion of the ALJ's consideration of the opinion evidence:

> The ALJ's assessment of opinion evidence is, in a word, confounding. Bearing in mind that the factors of supportability and consistency are paramount, it is important to note, at the outset, that the ALJ offered no insight into why the opinions he rejected were not consistent and not supportable and why the opinions he accepted were. In fact, his analysis is riddled with inconsistencies and utterly unsupportable. For example, though he credited findings of non-examining medical consultants and non-examining psychological consultants because they cite to the record, he parsed through them to determine that restrictions that differ from his own are not supported. R. 25. He never, however, explained why; he only insisted that his findings were correct.

(Pl. Br. 15-16). Plaintiff also takes umbrage with the ALJ's determination to discount Dr. Stilley's consultative examination report, in part, because it was a telemedicine visit. Id. 16. He notes that "since the pandemic, telemedicine has become quite popular. It is a

[3] "Prior administrative medical findings" is a term of art referring to the findings of state or federal agency physicians or psychologists about a medical issue at an earlier level of review. 20 C.F.R. § 404.1513(a)(5). Although the term is broader in scope than a "medical opinion," id. at § 404.1513(a)(2), the terms are often used interchangeably, and the court will follow that practice in this case except when necessary to draw a distinction. In discussing opinion evidence herein, the court includes both medical opinions and prior administrative medical findings.

legitimate, widely used form of medical care that connects patients with licensed healthcare professionals via phone, video, or online chat, and it has been found to be particularly effective for issues such as mental health services." (Pl. Br. 16) (citing www.mayoclinic.org). He also argues there is no reason for the ALJ to find the opinion was based entirely on subjective reports because Dr. Stilley "also included a lengthy description of his observations during a mental status examination and his interpretation of Plaintiff's appearance and behavior." Id.

The ALJ explained his consideration of the opinion evidence:

> The undersigned has considered prior administrative medical findings and opinions in the record as well and finds those by Charles Lee, M.D., and Thomas Davis, M.D., persuasive (Exhs 2A and 4A), in that each cited substantive evidence in support of his findings and their conclusions are not inconsistent with evidence available to them for review. However, when considering all the evidence, including the claimant's presentation and testimony at the disability hearing and the combination of all his impairments (severe and non-severe), the undersigned finds the claimant is more reasonably limited to light exertion.
>
> The undersigned finds prior administrative medical findings by Richard Kaspar, Ph.D., and Preston Davis, Psy.D., generally persuasive as well (Exhs 2A and 4A). Both cite substantive evidence from the record supportive of their findings. However, the undersigned finds both overstate the claimant's mental limitations, as the objective medical evidence of record does not support a finding that the claimant is limited to simple, unskilled work. The claimant's mental status findings and day-to-day functions exceed such. Thus, the undersigned finds Dr. Kaspar's and Dr. Davis' conclusions in this regard are inconsistent with the evidence and therefore unpersuasive in this specific regard.
>
> The undersigned finds opinions provided by consultative examiner Whitney Stilley, Psy.D., unpersuasive (Exh 6F/4-5). This opinion is based on one brief, superficial tele-doc meeting with the claimant and is entirely reliant upon the claimant's own subjective reporting of symptoms, limitations, and personal preferences as compared to the source doing her own independent review of historical treatment records. In fact, there is no indication that

> Dr. Stilley reviewed ANY historical treatment records. In addition, her own psychological testing of the claimant was minimal and fails to provide sufficient evidentiary support for her opinions regarding the claimant's functional limitations. Further, her stated opinion finds little to no support in or consistency with the longitudinal medical evidence of record.
>
> The undersigned finds opinions expressed by consultative examiner Abbie Martin, APRN, persuasive (Exh 7F/3). Ms. Martin provides a detailed report of her examination that is supportive of her stated opinions and generally consistent with medical evidence of record. However, in considering the entirety of evidence available in the record, the undersigned finds additional limitations are reasonably indicated. As previously noted, the claimant has a number of impairments that are not in themselves severe; but the undersigned finds the combination of all the claimant's severe and non-severe impairments supportive of exertional, postural and environmental limitations as stated in the functional capacity assessment set forth herein.
>
> While not required to assess or articulate persuasiveness of non-medical opinions (Exh 7E), the undersigned has noted and considered these as well in arriving at the present decision.

(R. 25).

He then summarized the conclusions of his RFC assessment:

> To summarize, although all diagnosed impairments were not substantially supported by medical evidence in this case, the undersigned has considered all diagnosed impairments in the residual functional capacity assessment. Considering the evidence in its entirety, including prior administrative medical findings, opinions and testimony provided, the undersigned finds the claimant has medically determinable impairments that are severe and could reasonably be expected to cause some symptoms he has alleged. However, even granting the claimant the benefit of the doubt, when considering his impairments singly or in combination, the undersigned concludes that the residual functional capacity assessment and limitations set forth in this decision are consistent with a ponderance of the evidence in this record and appropriately accommodate his impairments and symptoms, reflected by exertional, postural, environmental and mental limitations reasonably consistent with his impairments, as established by the record and previously discussed. As further explained below, the record fails to show, by the preponderance of the evidence, that the combined effect of all the claimant's impairments and associated symptoms causes disabling functional limitations.

(R. 26).

Although Plaintiff, not the Commissioner, has the burden regarding disability and functional limitations in a Social Security Disability case, the ALJ applied the correct legal standard in evaluating the opinion evidence in this case. Contrary to Plaintiff's allegations, the ALJ articulated his findings regarding consistency and supportability with respect to each medical opinion or prior administrative medical finding and pointed out the differences between his overall (general) finding of persuasiveness with respect to each opinion and particular portions of the opinions he found more or less persuasive.

The ALJ explained he found Drs. Lee's and Davis's prior administrative medical findings persuasive because the substantive evidence they cited supported their opinions and their conclusions were consistent ("not inconsistent") "with the evidence available to them for review." (R. 25). He then explained that although the medical consultants opined that Plaintiff was capable of medium exertional work, when considering the totality of the record evidence, Plaintiff "is more reasonably limited to light exertion." Id. Similarly, he found the psychological consultants, Drs. Kaspar and Davis, prior administrative medical findings "generally persuasive as well" because the substantive evidence they cited supported their opinions. Id. However, he explained he found a portion of their opinions inconsistent with the record evidence.

> However, the undersigned finds both [Doctors] overstate the claimant's mental limitations, as the objective medical evidence of record does not support a finding that the claimant is limited to simple, unskilled work. The claimant's mental status findings and day-to-day functions exceed such. Thus, the undersigned finds Dr. Kaspar's and Dr. Davis' conclusions in this regard are inconsistent with the evidence and therefore unpersuasive in this specific regard.

Id.

The ALJ then explained he found Dr. Stilley's opinion unpersuasive because it was "based on one brief, superficial tele-doc meeting with the claimant and is entirely reliant upon the claimant's own subjective reporting of symptoms, limitations, and personal preferences as compared to the source doing her own independent review of historical treatment records." (R. 25). The ALJ goes on to find no indication the psychologist reviewed any historical treatment records, that Dr. Stilley's "own psychological testing of the claimant was minimal and fails to provide sufficient evidentiary support for her opinions regarding the claimant's functional limitations," and the record provides little support for or consistency with her opinion. Id. The ALJ has provided his rationale for discounting Dr. Stilley's opinion. It is not his burden to prove Dr. Stilley wrong. It is Plaintiff's burden to demonstrate error in the ALJ's findings. Instead, he essentially argues, "The ALJ didn't prove it!" and asks the court to reweigh the record evidence and find otherwise. Plaintiff has not shown error in the ALJ's findings.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated September 21, 2026, at Kansas City, Kansas.

S/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**